**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000590
22-MAY-2026
08:30 AM
Dkt. 80 MO**</span>

NO. CAAP-23-0000590


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


GERALD K. MOUNT, JR. and JANE R. MOUNT,
Plaintiffs/Counterclaim Defendants/Cross-claimants-Appellees,
v.
MARGARET APAO, Defendant-Appellant, and
DIRK APAO, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
ROSE MARIE ALVARO, DECEASED, Defendant/Counterclaimant/
Third-Party Plaintiff-Appellant, and
SESHA LOVELACE, AS CO-PERSONAL REPRESENTATIVE OF THE ESTATE OF
ROSE MARIE ALVARO, DECEASED, Defendant/Cross-claim Defendant-
Appellee, and U.S. BANK NATIONAL ASSOCIATION, A NATIONAL
ASSOCIATION AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, 2005-SC1,
Third-Party Defendant/Cross-claimant-Appellee, and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10;
ALL PERSONS RESIDING WITH AND ANY PERSONS CLAIMING BY AND
THROUGH OR UNDER THEM, Defendants, and
DOES 1-50, Third-Party Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC111002005)


MEMORANDUM OPINION
(By: McCullen, Presiding Judge, Guidry, J.,
and Circuit Court Judge Costa in place of Nakasone, C.J.,
Leonard, Hiraoka, and Wadsworth, JJ., recused)

Defendant-Appellant Margaret Apao (**Margaret**) and Defendant/Counterclaimant/Third-Party Plaintiff-Appellant Dirk Apao (**Dirk**), as the Personal Representative of the Estate of Rose Marie Alvaro (**the Estate**), appeal from the October 17, 2023 Final Judgment and eight orders entered by the Circuit Court of the First Circuit.[1]

The proceedings in this case span over 15 years, and this is the third appeal. We vacate in part.

## I. BACKGROUND

In 2011, Plaintiffs-Appellees Gerald K. Mount, Jr. and Jane R. Mount (**Mounts**) filed a complaint against Margaret, and Dirk and Sesha Lovelace (**Sesha**), as co-personal representatives of the Estate.[2] The Mounts alleged that they purchased the real property located at 2979 Mākālei Place, Honolulu, Hawai'i 96815 (**the Property**) at a nonjudicial foreclosure sale, that Margaret was living at the Property with permission from the Estate, and that the Mounts were entitled to possession of the Property. The Mounts asserted claims for ejectment and quiet title.

---

[1] The Honorable John M. Tonaki entered the Final Judgment, and six of the eight orders challenged on appeal. The Honorable Keith K. Hiraoka entered two of the eight orders - the July 7, 2017, and October 23, 2017 orders in favor of the Mounts.

[2] According to Dirk, in 2003, the circuit court appointed him and his mother, Margaret, as co-personal representatives of the Estate. In 2010, Sesha replaced Margaret as a co-personal representative and later resigned, leaving Dirk as the sole personal representative of the Estate.

Margaret and Dirk filed an answer, and Dirk, in his capacity as personal representative of the Estate, filed a Counterclaim against the Mounts and a Third-Party Complaint against U.S. Bank National Association, a National Association as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, 2005-SC1 (**U.S. Bank**).

Dirk asserted that decedent Rose Marie Alvaro (**Alvaro**) obtained a $500,000.00 loan in 1999 from Fremont Investment & Loan, which was secured by a mortgage on the Property. Dirk asserted that the nonjudicial foreclosure U.S. Bank conducted, which resulted in the Mounts claiming ownership of the Property, violated the probate code, the nonjudicial foreclosure statute, and the mortgage, and that there had been a defective and fraudulent transfer of the mortgage. Dirk requested a declaratory judgment that the nonjudicial foreclosure and transfer of the Property were null and void, a judgment quieting title in favor of the Estate, and damages.

In 2013, a stipulation for partial dismissal dismissed the Mounts's claims against Sesha without prejudice. Another stipulation dismissed Claim 4 of Dirk's Counterclaim and Third-Party Complaint, the claim for defective and fraudulent transfer of the mortgage.

Also in 2013, the circuit court granted summary judgment in favor of the Mounts on their claim for ejectment and issued a writ of possession. Margaret and Dirk appealed.

In Mount v. Apao (Mount I), 139 Hawaiʻi 167, 179-80, 384 P.3d 1268, 1280-81 (2016), the Hawaiʻi Supreme Court determined that the nonjudicial foreclosure sale conducted by U.S. Bank violated Hawaiʻi Revised Statutes (**HRS**) § 667-5 (Supp. 2008), repealed by H.B. 1875, 26th Leg., Reg. Sess. (2012), and that further proceedings were necessary to determine if the Mounts were innocent purchasers for value.

In 2017, the circuit court granted a renewed motion for summary judgment, which determined the Mounts were innocent or bona fide purchasers for value. The circuit court entered a Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b) judgment, from which the Estate appealed.

In the meantime, the Mounts filed a Motion for Award of Attorneys' Fees and Costs, and Damages (**Mounts's 1st motion for damages**). The circuit court granted in part and denied in part the Mounts's 1st motion for damages, which denied them attorneys' fees, granted costs, and denied without prejudice the Mounts's request for damages for trespass and wrongful possession of the Property.

The Mounts also filed a Motion for Award of Damages for Ejectment, Pre-Judgment Interest, and for Entry of Final Judgment

4

(**Mounts's 2nd motion for damages**).  The circuit court granted in part and denied in part the Mounts's 2nd motion for damages, which awarded the Mounts damages and prejudgment interest but denied their request for HRCP Rule 54(b) certification.

The circuit court issued a minute order, staying further proceedings pending termination of the Estate's appeal from the determination that the Mounts were innocent or bona fide purchasers for value.

In March 2021, this court affirmed the circuit court's determination that the Mounts were innocent or bona fide purchasers for value.  Mount v. Apao (Mount II), 149 Hawai'i 104, 482 P.3d 567, CAAP-17-0000401, 2021 WL 944203 (App. Mar. 12, 2021) (mem. op.).

In 2022, Dirk moved for leave to amend his Third-Party Complaint, which the circuit court denied.

In January 2023, U.S. Bank filed a Motion for Partial Summary Judgment on Third-Party Plaintiff's Alleged Damages (**MPSJ regarding damages**), which the circuit court granted in part. The circuit court determined that the Estate could not recover for certain personal damages claimed by Dirk and Margaret or for tax obligations the Estate incurred in the sale of other Estate real properties.

In June 2023, U.S. Bank filed a Motion for Summary Judgment on Third-Party Plaintiff's Wrongful Foreclosure Claim

(**MSJ regarding wrongful foreclosure**). U.S. Bank asserted that the Estate had no damages caused by the wrongful foreclosure once the outstanding mortgage debt was taken into account, and that the Estate lacked the ability to reinstate the loan. The circuit court granted the MSJ regarding wrongful foreclosure.

U.S. Bank filed an Amended Motion for Partial Summary Judgment on Third-Party Plaintiff's Violation of Probate Code Claim (**MPSJ regarding Probate Code Claim**). The Estate had claimed that U.S. Bank violated HRS § 560:3-803 (2018) by failing to timely present its claim to the Estate and that the nonjudicial foreclosure and subsequent sale of the Property were void (**Probate Code Claim**). However, according to U.S. Bank, the Estate failed to notify U.S. Bank of the deadline for presentation of claims against the Estate, and notwithstanding the lack of notice, U.S. Bank provided the Estate with notice of its claim on numerous occasions. The circuit court granted U.S. Bank's MPSJ regarding Probate Code Claim.

In July 2023, U.S. Bank filed a Motion for Entry of Judgment Pursuant to HRCP Rule 54(b) (**Motion for Rule 54(b) Judgment regarding Mounts's claims**). U.S. Bank asserted that it had been assigned the Mounts's claims against Margaret and the Estate, all claims involving the Mounts were finally decided, and it sought entry of a Final Judgment in its favor for the Mounts's

claims. The circuit court granted the Motion for Rule 54(b) Judgment regarding Mounts's claims.

Dirk filed a Renewal of his Motion for Partial Summary Judgment as to Liability on his Third-Party Complaint (**Dirk's Renewed MPSJ regarding liability**). The circuit court denied Dirk's Renewed MPSJ regarding liability.

At the September 2023 hearing on U.S. Bank's Motion for Rule 54(b) Judgment regarding Mounts's claims and Dirk's Renewed MPSJ regarding liability, the parties agreed that although U.S. Bank had requested entry of final judgment only as to the claims involving the Mounts, all claims had been disposed of and entry of a final judgment on all claims was appropriate.

On October 17, 2023, the circuit court entered a Final Judgment with respect to all claims. Judgment was entered (1) in favor of U.S. Bank, as assignee of the Mounts's claims against Margaret and the Estate in the amount of $406,452.62 as of May 31, 2023, with per diem interest of $53.43 continuing to accrue thereafter, and (2) in favor of U.S. Bank on the Estate's Counterclaims against the Mounts and the Third-Party Complaint against U.S. Bank.

Margaret and Dirk appeal from the October 17, 2023 Final Judgment, and the (1) July 7, 2017 order granting in part and denying in part Mounts's 1st motion for damages; (2) October 23, 2017 order granting in part and denying in part

Mounts's 2nd motion for damages; (3) April 11, 2022 order denying Dirk's motion for leave to amend his Third-Party Complaint; (4) April 12, 2023 order granting in part and denying in part U.S. Bank's MPSJ regarding damages; (5) August 14, 2023 order granting U.S. Bank's MPSJ regarding Probate Code Claim; (6) August 29, 2023 order granting U.S. Bank's MSJ regarding wrongful foreclosure; (7) September 18, 2023 order denying Dirk's Renewed MPSJ regarding liability; and (8) September 18, 2023 order granting U.S. Bank's Motion for Rule 54(b) Judgment regarding Mounts's claims.

## II. DISCUSSION

On appeal, Dirk (and Margaret) raise the following five points of error (**POE**), contending the circuit court: (1) erred by granting U.S. Bank's motion for summary judgment on the Estate's wrongful foreclosure claim; (2) erred by granting U.S. Bank's motion for partial summary judgment on the Estate's violation of the Probate Code Claim; (3) erred by entering judgment in favor of U.S. Bank and against the Estate and Margaret in the amount of $406,452.62; (4) erred by denying the Estate's motion for summary judgment as to liability; and (5) abused its discretion by denying the Estate's motion for leave to amend the third-party complaint.

8

We hold the circuit court erred by granting summary judgment in favor of U.S. Bank on the Estate's claim for wrongful foreclosure (**POE 1**).  We otherwise affirm.

## A.    The Circuit Court Erred by Granting Summary Judgment in Favor of U.S. Bank on the Estate's Claim for Wrongful Foreclosure (POE 1)

Dirk asserts that the circuit court erred by granting summary judgment on the Estate's wrongful foreclosure claim because the Estate was entitled to recover for the equity in the Property at the time of U.S. Bank's wrongful foreclosure, but the circuit court accepted U.S. Bank's arguments that the Estate is limited to recovering its out-of-pocket expenses minus the outstanding mortgage debt, and the Estate would not have been able to reinstate the loan.

We review the grant or denial of summary judgment de novo.  Nationstar Mortg. LLC v. Kanahele, 144 Hawaiʻi 394, 401, 443 P.3d 86, 93 (2019).

To prevail on a wrongful foreclosure claim, a borrower must establish:  "(1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages."  Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 264 n.12, 428 P.3d 761, 776 n.12 (2018), overruled on other grounds by Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawaiʻi 1, 556 P.3d 347 (2024).

Because the Hawaiʻi Supreme Court determined in Mount I that it was wrong for U.S. Bank not to provide reinstatement figures, the Estate may be able to recover the positive equity. The Estate presented sufficient evidence to raise a genuine issue of material fact regarding its ability to reinstate the loan and, therefore, it was error to grant summary judgment in favor of U.S. Bank on the Estate's wrongful foreclosure claim.

### 1. Positive equity

The damages recoverable by a borrower for wrongful foreclosure differ depending on whether the unlawful foreclosure was "merely procedurally defective" or undertaken "without foreclosure authority" at all. Llanes v. Bank of Am., N.A., 154 Hawaiʻi 423, 431, 555 P.3d 110, 118 (2024) (citing Wong v. Ass'n of Apartment Owners of Harbor Square, 154 Hawaiʻi 58, 63, 67, 545 P.3d 547, 552, 556 (2024)). In Llanes, the plaintiff borrowers pursuing wrongful foreclosure claims were not current on their mortgages, and the lender had the right to foreclose upon their properties under powers of sale. Id. The borrowers claimed that the nonjudicial foreclosures did not comply with the requirements of HRS § 667-5 because the lender continued the auction but did not republish notice of the actual auction dates. Id. at 426-27, 555 P.3d at 113-14. Borrowers sought restitution and damages, including the foreclosed properties' market values plus

interest, lost rent, and acquisition and improvement costs. Id. at 427, 555 P.3d at 114.

The supreme court held that, in computing damages for the wrongful foreclosures, the Llanes borrowers were entitled to recover their out-of-pocket expenses less the amount of the forgiven mortgage debts. Id. at 431-32, 555 P.3d at 118-19. They also were permitted to recover for loss-of-use damages, which the Llanes borrowers claimed for the period beginning from when they were ousted from their properties and continuing until six months after the properties were sold to third parties. Id. at 427, 433, 545 P.3d at 114, 120. The supreme court agreed with the circuit court's determination that the Llanes borrowers were not entitled to recover for the value of the properties at the time of the loan because it would put them "in a much better position than they were in pre-foreclosure where the property was a distressed asset in a depressed housing market." Id. at 427, 432, 545 P.3d at 114, 119.

In Wong, the Hawai'i Supreme Court held that the plaintiff was entitled to recover positive equity in the property as an element of damages for wrongful foreclosure where a condominium association conducted a nonjudicial foreclosure without authority to do so. 154 Hawai'i at 61, 545 P.3d at 550. The condominium association in Wong did not have a power of sale that permitted it to conduct nonjudicial foreclosures. Id. The

11

supreme court stated that the damages should be calculated by taking the positive equity in the property when wrongfully foreclosed (property's market value minus outstanding mortgage debt), adding lost rents or use from the time between the wrongful foreclosure and a valid foreclosure, minus unpaid association fees and assessments up until the valid foreclosure. Id. at 61, 67, 545 P.3d at 550, 556. The supreme court stated that computing damages in this manner "places the plaintiff in their pre-tort position with a remedy tethered to the wrong." Id. at 61, 545 P.3d at 550. As relevant here, the supreme court stated:

> A plaintiff's pre-tort position also includes their equitable right to redeem the property before a final foreclosure judgment. See Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Hawai'i 157, 164, 969 P.2d 1275, 1282 (1998) (recognizing equitable redemption). If a plaintiff can clearly show that they would have redeemed their property absent the AOAO's wrongful foreclosure, they may assert damages from losing their equitable right.

Id. at 66-67, 545 P.3d at 555-56.

In Mount I, the supreme court determined that U.S. Bank's nonjudicial foreclosure on the Estate's Property was wrongful because Sesha made repeated requests for reinstatement figures from February 2011, until the foreclosure sale on April 4, 2011, and U.S. Bank failed to provide it. 139 Hawai'i at 178-79, 384 P.3d at 1279-80. The supreme court noted that "a right to cure a default and stop the foreclosure continues up to the day of the confirmation of the sale", and "equity abhors

12

forfeitures." Id. at 178, 384 P.3d at 1279 (quoting Santiago v. Tanaka, 137 Hawai'i 137, 157, 366 P.3d 612, 632 (2016)).

Based on Wong and the Mount I determination that the foreclosure was wrongful, unless it was undisputed that the Estate would have been incapable of reinstating the loan, the Estate should be entitled to recover the positive equity in the Property as of the date of the foreclosure sale. See Wong, 154 Hawai'i at 66-67, 545 P.3d at 555-56.

In moving for summary judgment, U.S. Bank asserted that consistent with Lima v. Deutsche Bank Nat'l Tr. Co., 149 Hawai'i 457, 467, 494 P.3d 1190, 1200 (2021), which held that a borrower's mortgage debt must be taken into account in computing damages, the Estate would not be able to prove out-of-pocket damages. With respect to the first mortgage, the payments made by Alvaro and her Estate prior to the foreclosure totaled $531,538.90. However, the balance of the first mortgage paid by the nonjudicial foreclosure sale was $574,918.19. With respect to the second mortgage, payments made by Alvaro and her Estate totaled $270,024.04. The second mortgage holder received payment of $600,084.48 from the nonjudicial foreclosure sale proceeds.[3] Because the amounts paid on the first and second

---

[3] In the argument section of U.S. Bank's memorandum in support of the MPSJ regarding Wrongful Foreclosure Claim, there is a typographical error that the amount paid on the second mortgage was $600,084.14, but its exhibit showed the payment as being for $600,084.48. The facts section of the memorandum states the amount paid on the second mortgage as being $600,084.48, consistent with its Exhibit 21.

13

mortgages upon closing of the nonjudicial foreclosure sale ($574,918.19 + $600,084.48 = $1,175,002.67) exceeded the payments made by Alvaro and the Estate on those mortgages ($531,538.90 + $270,024.04 = $801,562.94), U.S. Bank argued that the Estate would be unable to prove any out-of-pocket damages.[4]

U.S. Bank continues to maintain that the Estate was limited to out-of-pocket damages because in Mount I the supreme court instructed the circuit court to apply Santiago to determine an appropriate remedy, and in Santiago the plaintiff was awarded out of pocket losses. However, the supreme court noted that, similar to Santiago, the Mounts had possession of the Property for some time, which may render voiding the foreclosure sale impracticable. 139 Hawaiʻi at 180, 384 P.3d at 1281.

U.S. Bank asserts that even under Wong, the Estate would not be able to prove damages because this court determined in Mount II that the Mounts had paid adequate consideration for the property. However, adequate consideration to qualify as a bona fide purchaser is not the same as fair market value because

---

[4]  If the Estate is entitled to indemnification from U.S. Bank for its liability to the Mounts, the Estate still would not be able to demonstrate damages under the out-of-pocket-expenses method. The October 17, 2023 Final Judgment awarded U.S. Bank, as assignee of the Mounts's claims, a judgment of $406,452.62, plus per diem interest of $53.43 for each day after May 31, 2023, until the judgment was satisfied. The payments made by Alvaro and the Estate on the mortgages and the amount owed to the Mounts total $1,208,015.56 ($801,562.94 + $406,452.62), which exceeds the $1,175,002.67 debt paid off through the nonjudicial foreclosure by $33,012.89. The Estate received $33,926.96 in surplus proceeds from U.S. Bank's nonjudicial foreclosure.

a bona fide purchaser is not required to pay fair market value. See McCullough v. Bank of Am. N.A., 156 Hawai'i 446, 456, 575 P.3d 536, 546 (2025) (explaining that "a bona fide purchaser is one who acquires an interest in a property for valuable consideration, in good faith, and without notice of another party's adverse interests in the property") (citation modified); HawaiiUSA Fed. Credit Union v. Monalim, 147 Hawai'i 33, 45, 464 P.3d 821, 833 (2020) (recognizing that "the price obtained at a foreclosure sale is often far below the fair market value").

The Estate presented an appraisal report prepared by Matthew Yong and Harlin Young, licensed appraisers, that determined the fair market value of the Property to be approximately $3,500,000.00 on July 22, 2011, the date U.S. Bank conveyed the Property to the Mounts.[5] Rather than receive the $2,324,997.33 of equity ($3,500,000.00 (fair market value) - $574,918.19 (1st mortgage balance) - $600,084.48 (2nd mortgage balance)) in the Property at the time of transfer to the Mounts, the Estate only received $33,926.96 in surplus proceeds from the wrongful foreclosure. Considering the lost equity alone, it appears that the circuit court erred in granting summary judgment on the wrongful foreclosure claim on the basis that the

---

[5] A copy of the deed recorded on July 22, 2011, conveying the Property to the Mounts is attached to the Mounts's Complaint.

Estate was limited to out-of-pocket expenses and could prove no damages.[6]

### 2.    Genuine issue of material fact

Construed in the light most favorable to the Estate, Dirk's submissions raise a genuine issue of material fact regarding the Estate's ability to reinstate the loan and whether the wrongful foreclosure caused the Estate damages.

Dirk submitted his declaration, which included a list he prepared identifying five real properties the Estate owned, in addition to the subject Property, and his estimates of the equity in each of the real properties totaling approximately $5,865,000.00.  Dirk asserted that if U.S. Bank had litigated a claim in the formal probate proceeding or a judicial foreclosure action, it would have been required to provide reinstatement information, which would have allowed the Estate to avoid foreclosure through mortgage financing, private lending, or selling the Estate's other assets.  The Estate also could have sold the subject Property.  The appraisal obtained by the Estate showed there was $2,324,997.33 of equity in the Property at the time of the transfer to the Mounts.

---

[6]    The Estate also claimed it should be awarded prejudgment interest, storage costs incurred for storing the Estate's personal property after being evicted, attorneys' fees and costs, and indemnification for the amounts owed to the Mounts.  The Estate presented storage rental contracts and credit card statements to substantiate its claimed storage expenses but did not present any theory as to why the Estate would be entitled to an attorneys' fees award.

U.S. Bank asserts that the Estate failed to raise a genuine issue of material fact that the failure to provide the reinstatement quote caused the Estate damages because the Estate did not have enough cash to bring the loan current and had no evidence of any timely steps taken to reinstate the loan.

U.S. Bank submitted copies of the Estate's bank statements showing the Estate lacked cash. U.S. Bank also submitted a declaration from Gary **Dubin**, attorney for Dirk, in which Dubin stated that the Estate's cash flow was insufficient to pay the existing mortgages and maintain the Estate properties, and that Dirk, Margaret, and another family member loaned the Estate over $300,000.00. U.S. Bank also submitted Dirk's deposition testimony acknowledging the Estate had only approximately $10,000.00 in cash, although he claimed he would have been able to obtain funds to reinstate the loan within thirty days through borrowing from a friend or his brother. An April 1, 2011 reinstatement quote prepared by the loan servicer but not sent to the co-personal representatives stated $144,586.95 was necessary to reinstate the loan.

In addition, U.S. Bank argued that although Dirk claimed the Estate could sell assets to reinstate the loan, it did not list any real properties for sale until February 2011, when it listed a Kapiʻolani Boulevard property for sale, and the sale did not close until July 31, 2013, more than two years after

17

the nonjudicial foreclosure sale.  Dirk testified that the Kapi‘olani Boulevard property sale proceeds were applied to tax liens.  The Estate was aware the subject mortgage loan had been in default since 2010 because Margaret received a February 25, 2010 reinstatement quote addressed to Alvaro and shared it with Dirk.

However, the fact that the Estate only listed the Kapi‘olani Property for sale and the sale did not close by the time of the Mounts's purchase does not establish that the Estate would not - or could not - have raised the cash necessary to reinstate the loan if given a reinstatement quote.  The auction appears to have generated significant interest in the Property, with Gerald Mount stating that three to five parties other than himself participated in the bidding, and approximately fifteen to twenty bids were submitted.  Dirk states the co-personal representatives "could have then made arrangements" to reinstate the loan "through obtaining mortgage financing, private lending, or selling other assets of the Estate" or selling the Property itself.  See Mount I, 139 Hawai‘i at 177, 384 P.3d at 1278 (citing HRS § 560:3-703(a) (Supp. 1997)) ("A personal representative is a fiduciary acting on behalf of an estate.").

Construed in the light most favorable to the Estate, the declaration and the appraisal suggesting that there was $2,324,997.33 of equity in the Property appear to raise a

18

disputed issue of material fact of whether the Estate was capable of, and would have reinstated the first mortgage loan or sold the Property, if presented with a formal reinstatement quote.

**B.    The Circuit Court Did Not Err by Denying Dirk's Renewed MPSJ Regarding Liability (POE 4)**

We next address POE 4 as it relates to the Estate's wrongful foreclosure claim.  In POE 4, Dirk asserts the circuit court erred by denying his Renewed MPSJ regarding liability on the wrongful foreclosure claim.  Dirk contends Mount I determined that U.S. Bank's nonjudicial foreclosure was wrongful and was law of the case.  Therefore, Dirk asserts, the circuit court should have determined liability in favor of the Estate and ordered a trial on damages.

A determination of a question of law made by an appellate court becomes law of the case and may not be reopened at a later stage of the litigation.  Weinberg v. Mauch, 78 Hawaiʻi 40, 47, 890 P.2d 277, 284 (1995).  Although Mount I determined that U.S. Bank violated HRS § 667-5(c) by not providing Sesha with reinstatement figures, the Estate would still need to prove causation before liability on the wrongful foreclosure claim could be established.  See Reyes-Toledo, 143 Hawaiʻi at 264 n.12, 428 P.3d at 776 n.12.

For the reasons discussed above regarding POE 1, the law of the case does not mandate liability in favor of the Estate

19

because the issues of causation and damages were disputed issues of fact.

**C.      The Circuit Court Did Not Err by Granting Summary Judgment on the Violation of Probate Code Claim (POE 2)**

Dirk asserts that by proceeding with the nonjudicial foreclosure auction, U.S. Bank violated HRS § 560:3-803(c)(2) of the Hawaiʻi probate code, which bars claims arising after the death of the decedent, if not presented to the Estate within eighteen months of the decedent's death or within four months after the claim arises, whichever is later.[7]

In moving for summary judgment on the violation of probate code claim, U.S. Bank asserted that it did not violate HRS § 560:3-803 because:  (1) the co-personal representatives failed to notify U.S. Bank of the deadline to present claims against the Estate; and (2) notices sent to the Property, addressed to Alvaro, constitute a timely presentation of the claim to the Estate.

HRS § 560:3-803, "Limitations on presentation of claims," states in part:

> (a)   All claims against either a decedent or a decedent's estate that arose before the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by another statute of limitations or non-claim statute, are barred against the estate, the personal representative, the

_____

[7]  U.S. Bank agrees that its claim arose after Alvaro's death because Alvaro died in 2002, but the loan default occurred in March 2009.

decedent's trustee and the heirs and devisees of the decedent, unless presented within the earlier of the following:

    (1)    No later than:

        (A)    Four months after the date of the first publication of notice to creditors if notice is given in compliance with section 560:3-801(a); or

        (B)    Sixty days after the mailing or other delivery of a written notice, as provided in section 560:3-801(b); whichever period (A) or (B) expires later; or

    (2)    Within eighteen months after the decedent's death, if notice to creditors has not been published as provided in section 560:3-801(a) or delivered as provided in section 560:3-801(b).

    . . . .

    (c)    All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, the decedent's trustee, and the heirs and devisees of the decedent, unless presented as follows:

    (1)    A claim based on a contract with the personal representative or trustee, within four months after performance by the personal representative or trustee is due; or

    (2)    Any other claim, within the later of four months after it arises, or the time specified in subsection (a)(2).

    (d)    Nothing in this section affects or prevents:

    (1)    Any proceeding to enforce any mortgage, pledge, or other lien upon property of the estate[.]

(Emphases added.)

At the hearing, the circuit court stated:

    THE COURT: Okay. The -- the Court will grant Third Party Defendant U.S. Bank's motion for partial summary judgment on the Third Party Plaintiff's violation of probate code claim. The Court will find that there's no genuine issue of material fact that U.S. Bank timely made a

21

claim within four months of the claim arising.  U.S. Bank presented their claim in compliance with HRS 560:3-803(c)(2) within four months after it arose.

Specifically, the April 16th, 2009 default notice was mailed to the property where Ms. Apao, the personal representative at the time, resided.  Also, the fax that Ms. Apao sent to her son on March 31st, 2010 indicates that Ms. Apao had notice that the mortgage was in default and that the reinstatement amount was $72,645.42.  And the fact that the communications came through [American Home Mortgage Servicing, Inc. (**AHMSI**)], the Court is not convinced that the parties did not have notice that AHMSI was the agent for the bank, when clearly it was the mortgage through U.S. Bank that was being discussed in these communications.

In <u>Lawelawe v. Kahalepuna</u>, 26 Haw. 615 (Haw. Terr. 1922), the Territorial Court held that no particular form is required to present a claim against an estate, and explained:

> The purposes of a claim are to advise the legal representative of the estate of the deceased debtor of the nature and amount of the alleged indebtedness so that he may intelligently determine whether the same is just and should be paid and if paid would be available as a bar to any future action that might be prosecuted by the creditor upon the same claim.  When presented the administrator or executor, as trustee for all creditors and beneficiaries ultimately entitled, is bound to investigate the claim and if found to be just, make provision for its payment.  These requirements are simple and due to the liberality of interpretation accorded to statutes of this character in respect to the remedy provided no formality is required.  The sufficiency of a claim is not measured by its ability to withstand a general or special demurrer.  A cause of action, as that term is understood in pleading, need not be stated.  The rules of pleading do not apply.

26 Haw. at 617-18.

Given that no particular form is required for the presentation of a claim, the circuit court did not err in determining there was no genuine issue of material fact that U.S. Bank timely presented a claim through its April 16, 2009 default notice.

22

The April 16, 2009 default notice was addressed to the Borrower, Alvaro, at the Property, rather than to Margaret or Dirk as co-personal representatives. A declaration from James Brantley (**Brantley**), vice president of Homeward Residential, Inc., formerly known as AHMSI, states that neither Homeward nor the prior servicer, Option One Mortgage, was ever provided documentation evidencing the death of the Borrower or given an address other than the Property address for giving of notices to the Borrower. As a result, all communications regarding the loan were addressed to the Borrower and sent to the Property.

The April 16, 2009 default notice identified the debt as the original mortgage in the amount of $500,000.00, with the first payment made on December 1, 1999, and the Borrower as Rose Marie Alvaro. It identified the Property as securing the debt, stated the loan was in default due to non-payment of the March 1, 2009 payment and subsequent payments, and that $11,606.14 was necessary to cure the default. It advised that if AHMSI did not receive the amount necessary to cure the default within thirty days, AHMSI would accelerate the loan balance and proceed with foreclosure.

Margaret testified at deposition that she began residing at the Property around 2006 or 2007 and collected the mail. She also acknowledged that she did not notify the

Estate's creditors of Alvaro's death, although she made payments on the mortgage using checks drawn on the Estate's account.

In arguing that the April 16, 2009 default notice was not a valid presentation of claim, Dirk argued there was no proof of mailing to or receipt by the co-personal representatives. Dirk also asserted the April 16, 2009 default notice was improperly addressed to the decedent, and not the personal representative and did not properly identify U.S. Bank as the claimant or explain AHMSI's relationship to U.S. Bank. Dirk continues to assert these arguments on appeal.

However, the Brantley declaration states that AHMSI sent the April 16, 2009 default notice to the Borrower on or about the same date to notify the Borrower the loan was in default. Brantley states that he has personal knowledge of the matters in his declaration based upon his review of business records on file for the loan. Margaret presented no evidence to dispute that she was still living at or collecting mail at the Property at the time of the April 16, 2009 default notice.

Dirk asserts that U.S. Bank incorrectly argued that the co-personal representatives were required to and failed to notify creditors of the deadline to present claims against the Estate. The Estate was not required to provide notice to creditors, although providing notice to creditors would shorten the time for presentation of claims. See HRS §§ 560:3-801(a) (providing that

24

a person petitioning for appointment of a personal representative or probate of a will <u>may</u> publish notice to creditors), -803(a) (barring claims four months after first publication of notice of creditors or sixty days after delivery of notice but allowing until eighteen months after a decedent's death if notice has not been published or given to creditors).

On this record, the circuit court was not wrong in determining there was no genuine issue of material fact that U.S. Bank satisfied the requirements of HRS § 560:3-803(c)(2) of the Hawaiʻi probate code through the April 16, 2009 default notice mailed to the Property.

**D.     The Circuit Court Did Not Err or Abuse Its Discretion by Entering Judgment in Favor of U.S. Bank as Assignee of the Mounts's Claims (POE 3)**

Dirk asserts that the circuit court erred by entering judgment in favor of U.S. Bank as assignee of the Mounts's claims because (1) U.S. Bank was not substituted in as a party in place of the Mounts and (2) it was unjust given that the nonjudicial foreclosure that U.S. Bank conducted was wrongful and caused the Estate to incur liability to the Mounts.

**1.     A separate motion was not required**

Dirk cites HRCP Rule 25 to support his contention that U.S. Bank was required to file a motion for substitution to obtain judgment in its favor as assignee of the Mounts's claims.

25

HRCP Rule 25(c) states:

> <u>Transfer of interest</u>.  In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.  Service of the motion shall be made as provided in subdivision (a) of this rule.

Dirk also argues that, in <u>Sandstrom v. Larsen</u>, 59 Haw. 491, 501, 583 P.2d 971, 979 (1978), the supreme court explained that in order for a transferee of an interest to be substituted as a party, a motion for substitution must first be made.  Because U.S. Bank did not file a motion to be substituted in place of the Mounts, Dirk contends that the circuit court erred in entering judgment in favor of U.S. Bank as assignee of the Mounts's claims.

<u>Sandstrom</u> is distinguishable and involved a mandatory injunction requiring Appellants to comply with a restrictive height covenant.  <u>Id.</u> at 492, 583 P.2d at 974.  The supreme court commented that a motion for substitution of parties would be necessary to enforce the mandatory injunction if the downslope property owner had sold their property.  <u>Id.</u> at 501, 583 P.2d at 979.

In this case, U.S. Bank did not need to be substituted in as a party because it was already a party to the suit.

HRCP Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required."  HRCP Rule 8(f)

26

states that "[a]ll pleadings shall be so construed as to do substantial justice." "If a claim for relief is otherwise alleged, substance controls over form." Gelsey v. Ka Ono Ulu Est. Cmty. Ass'n, Inc., 143 Hawai'i 523, 432 P.3d 2, CAAP-15-0000510, 2018 WL 6735172, at *2 (App. Dec. 24, 2018) (mem. op.) (citing In re Eric G., 65 Haw. 219, 224, 649 P.2d 1140, 1144 (1982)).

In its Motion for Rule 54(b) Judgment regarding Mounts's claims, U.S. Bank asked for judgment in its favor on the Mounts's claims and attached a copy of an Assignment of Judgment and Claims signed by the Mounts. Even if a motion for substitution was necessary, there was no error in granting the Motion for Rule 54(b) Judgment regarding Mounts's claims because the substance of the motion may be construed as requesting both substitution and entry of final judgment.

### 2. No abuse of discretion in granting U.S. Bank's request for entry of final judgment on the Mounts's claims

Dirk asserts that it was unjust for the circuit court to enter a monetary judgment in favor of U.S. Bank against the Estate given that U.S. Bank conducted a wrongful foreclosure, and the Estate incurred liability to the Mounts as a result. Before entering a monetary judgment in favor of U.S. Bank, Dirk asserts, the Estate should recover damages for the wrongful foreclosure and reimbursement for its liability to the Mounts.

27

HRCP Rule 54(b) permits certification of finality for an immediate appeal where "(1) more than one claim for relief is presented or multiple parties [three or more] are involved, and (2) the judgment entered completely disposes of at least one claim or all of the claims by or against at least one party." Elliot Megdal & Assocs. v. Daio USA Corp., 87 Hawaiʻi 129, 133, 952 P.2d 886, 890 (App. 1998) (citations omitted).

> A lower court's decision to enter an HRCP Rule 54(b) certification is reviewed on appeal under a dual standard. The extent of a lower court's power to enter an HRCP Rule 54(b) certification of finality is a question of law, reviewed de novo. However, a lower court's decision to utilize its power under HRCP Rule 54(b) is reviewed under the abuse of discretion standard.

Id. at 132, 952 P.2d at 889 (citations omitted).

The Mounts asserted claims against Margaret and the Estate, and the Estate asserted claims against the Mounts. When U.S. Bank answered the Estate's Third-Party Complaint, U.S. Bank did not file any claims. Thus, once it was determined that the Mounts were good faith purchasers for value and entitled to monetary damages against Margaret and the Estate for their continued possession of the Property, the circuit court had the power to authorize a final judgment on the Mounts's claims. See FFG, Inc. v. Jones, 6 Haw. App. 35, 45, 708 P.2d 836, 844 (App. 1985) ("[A]t least one 'claim' or all rights and liabilities of at least one party must be decided before the lower court can apply Rule 54(b)."). It was within the discretion of the circuit court to enter a final judgment on the

28

Mounts's claims, and Dirk does not demonstrate that the circuit court abused its discretion.

The presence of a counterclaim seeking setoff is a factor weighing against the grant of an HRCP Rule 54(b) certification but is not controlling. Arimizu v. Fin. Sec. Ins. Co., 5 Haw. App. 106, 113, 679 P.2d 627, 633-34 (App. 1984) (citing Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 9 (1980)) (noting that federal counterpart to HRCP Rule 54(b) "would lose much of its utility" if the presence of a counterclaim renders certification inappropriate).

Here, allowing for entry of an HRCP Rule 54(b) judgment on the Mounts's claims would expedite reaching a final decision on those claims in a case with a lengthy litigation history. Also, the Estate admittedly had cash flow problems and had been liquidating assets to pay claims, such as the Kapiʻolani Boulevard property it sold to satisfy tax liens.

In contrast, nothing appears to suggest that the Estate would be unable to collect from U.S. Bank if it ultimately obtains a judgment against U.S. Bank. Accordingly, there was no abuse of discretion by the circuit court in granting the HRCP Rule 54(b) certification.

**E.    The Circuit Court Did Not Abuse Its Discretion by Denying
       Dirk Leave to Amend the Estate's Third-Party Complaint
       (POE 5)**

Finally, Dirk contends that the circuit court abused its discretion by denying him leave to amend his Third-Party Complaint.  Dirk sought to amend the Third-Party Complaint to add a claim against U.S. Bank for unfair and deceptive acts and practices (**UDAP**) and remove the claims seeking recovery of possession and title to the Property, leaving two claims against U.S. Bank - the wrongful foreclosure/declaratory judgment claim and the UDAP claim.

U.S. Bank argues, among other things, that Dirk's inexcusable delay in moving to amend was egregious because it was based on facts known to him and arising out of the foreclosure conducted in 2011.  U.S. Bank also raised prejudice because witnesses involved in the nonjudicial foreclosure were no longer available or had faded memories, those still available may need to be re-deposed, and records may no longer be available.

The denial of leave to amend a complaint under HRCP Rule 15(a) or (b) is reviewed under the abuse of discretion standard.  Carvalho v. AIG Hawai'i Ins. Co., 150 Hawai'i 381, 384, 502 P.3d 482, 485 (2022) (citing Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008)).

Counsel for U.S. Bank told the circuit court that Fremont Investment & Loan, Inc., the original mortgagee, was liquidated, and the prior servicer, Option One, was out of business. The foreclosing law firm, RCO Hawaii, is also out of business. Derek Wong, the attorney identified in the notice of auction, was deposed in October 2012. Also, one of U.S. Bank's expert witnesses had passed away.

The circuit court acknowledged that the supreme court held in Carvalho that undue delay alone is not a sufficient basis to deny leave to amend. 150 Hawaiʻi at 386, 502 P.3d at 487. However, the circuit court denied leave to amend based on prejudice, stating that adding a new UDAP claim "would potentially have the effect of -- prejudicing the Defendants," and that Plaintiffs still had their cause of action for damages.

Given that the facts that formed the basis for the proposed new UDAP claim had been known to the Estate and some businesses involved in the loan and the nonjudicial foreclosure were no longer in business, there was no abuse of discretion by the circuit court in denying leave to amend.

### III. CONCLUSION

For the foregoing reasons, we vacate in part the circuit court's October 17, 2023 Final Judgment as to the

31

wrongful foreclosure claim but otherwise affirm.  We remand this case to the circuit court for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, May 22, 2026.

On the briefs:

Frederick J. Arensmeyer,
for Defendant-Appellant
Margaret Apao and Defendant/
Counterclaimant/Third-Party
Plaintiff-Appellant Dirk
Apao, as Personal
Representative of the Estate
of Rose Marie Alvaro,
Deceased.

David A. Nakashima,
Michelle N. Comeau,
(Nakashima Ching), and
Meagan S. Tom,
for Third-Party Defendant/
Cross-claimant-Appellee.

/s/ Sonja M.P. McCullen
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Brian A. Costa
Circuit Court Judge